**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| OLD NATIONAL BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 1:11-cv-01539-TWP-DKL |
| LEASING INNOVATIONS, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON CHOICE OF LAW**

This matter is before the Court on the parties' motions regarding choice of law (Dkts. 37, 38). Plaintiff Old National Bank ("ONB") has filed suit against Defendant Leasing Innovations, Inc. ("Leasing Innovations") seeking recession of a Bill of Sale and Assignment (the "Assignment") due to either mutual mistake of fact, or, alternatively, the nonexistence of the security interest, constituting a complete failure of consideration. Leasing Innovations is a California corporation with business operations in California and Massachusetts. ONB is a national banking association with its principal place of business in Indiana.

On April 10, 2007, Leasing Innovations assigned to ONB, through the Assignment, all of Leasing Innovations' rights as lessor under a lease (the "Equipment Lease") for the manufacturing equipment (the "Equipment") of Wildwood Industries, Inc. ("Wildwood").[1] In consideration for the Assignment, ONB paid Leasing Innovations $1,911,950.50.

On March 5, 2009, Wildwood was placed into an involuntary bankruptcy proceeding, wherein it was discovered that Wildwood had participated in a massive fraudulent scheme

---

[1] Wildwood is a Delaware corporation with its principal place of business in Illinois.

regarding the Equipment Lease, along with numerous other equipment leases involving multiple financial institutions.  The fraudulent scheme revealed that the Equipment which secured ONB's Assignment was never actually manufactured.  Subsequently, ONB filed suit against Leasing Innovations seeking either rescission of the contract based upon the mutual mistake of both ONB and Leasing Innovations, or rescission due to failure of consideration.  *See* Dkt. 1 at 3–5.

Unfortunately, the Assignment entered into by ONB and Leasing Innovations did not contain a choice of law provision.  Furthermore, the parties disagree on the state law that should govern in this case.  Therefore, the parties ask the Court to determine which state's substantive law shall govern this case.  For the reasons set forth below, the Court determines that Indiana law shall apply.  As such, ONB's motion (Dkt. 37) is **GRANTED** and Leasing Innovation's motion (Dkt. 38) is **DENIED**.

## I.  LEGAL STANDARD

A court in a diversity case must apply the substantive law of the forum in which it sits, including that pertaining to choice of law.  *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013).  Therefore, if the laws of more than one jurisdiction arguably could apply to particular case, federal courts must apply the forum state's choice of law rules.  *Jean v. Dugan*, 20 F.3d 255, 260–61 (7th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).  Accordingly, the Court will apply Indiana's choice of law rules in making its determination of which state's law governs the substantive issues.

Under Indiana law, "before applying the choice of law analysis all laws must be carefully examined to determine that a conflict actually exists."  *Loos v. Farmer's Tractor & Implement Co.*, 738 F. Supp. 323, 324 (S.D. Ind. 1990); *see Am. Emp'rs Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1176 (Ind. Ct. App. 2005).  When the laws potentially governing a contract

action do in fact conflict, Indiana courts apply the "most intimate contacts" test to resolve any choice of law issues. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 815 (Ind. 2010) (citing *W.H. Barber Co. v. Hughes*, 63 N.E.2d 417, 423 (Ind. 1945)). "[T]he test requires the court to analyze 'all acts of the parties touching the transaction in relation to the several states involved' and apply 'the law of that state with which the facts are in most intimate contact.'" *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 581 (7th Cir. 1994) (quoting *Hughes*, 223 N.E.2d at 423).

In assessing the most intimate contacts, Indiana courts apply the factors found in the Restatement (Second) of Conflict of Laws § 188(2). These factors are: 1) the place of contracting; 2) the place of contract negotiation; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Am. Emp'rs Ins. Co.*, 838 N.E.2d at 1177 (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)).

## II.  DISCUSSION

ONB argues the parties have not chosen which state's law applies for the governing action, and the applicable laws of each state do not conflict with each other, therefore Indiana law should apply. Leasing Innovations concedes the parties have not chosen which state's law applies, but argues that the applicable laws of Illinois and California conflict with the laws of Indiana and therefore either Illinois or California law should apply. A conflict of laws exists only "when a difference in law makes a difference to the outcome." *Loos*, 738 F. Supp. at 324. Thus the court must determine whether Indiana, Illinois, and California laws would produce differing outcomes with regard to the principles of mutual mistake and failure of consideration.

### A.  Mutual Mistake

Under Indiana law, to rescind a contract on "mutual mistake," the party looking to rescind

3

must show: 1) the mistake relates to the essence, or *sine qua non*, of the agreement; and 2) the parties can be returned to the status quo. *Peoples State Bank v. First Sec. Leasing, Inc.*, No. 1:09-cv-01496-TWP-MJD, 2012 WL 243604, at *4 (S.D. Ind. Jan. 25, 2012) (citing *Stainbrook v. Low*, 842 N.E.2d 386, 397 (Ind. Ct. App. 2006)). Furthermore, "[a] party may not rescind a contract on the basis of a risk it knew was inherent in the agreement." *Id*. at *5 (citation omitted).

In Illinois, "[a] mutual mistake results when both parties share a common assumption about a vital existing fact upon which they based their bargain and that assumption is false and because of the mistake, a quite different exchange of values occurs from the exchange of values the parties contemplated." *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 421 (7th Cir. 1998) (internal quotation and alterations omitted). A party looking to rescind a contract based on mutual mistake must show: 1) that the mistake relates to a material feature of the contract; 2) that it occurred notwithstanding the exercise of reasonable care; 3) that it is of such grave consequence that enforcement of the contract would be unconscionable; and 4) that the other party can be placed in status quo. *United States v. Sw. Elec. Coop., Inc.*, 869 F.2d 310, 314 (7th Cir. 1989).

Finally, in California, rescission by mutual mistake is governed by statute.[2] California Civil Code § 1689(b)(1) states in part that a "party to a contract may rescind the contract . . . [i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake." Mistake of fact is defined in California Civil Code § 1577. A mistake of fact is not "the neglect of a legal duty on the part of the person making the mistake," but consists of "[a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract" or

---

[2] The multi-part standard cited by ONB applies to instances of unilateral mistakes. *See Donovan v. RRL Corp.*, 27 P.3d 702, 716 (Cal. 2001).

4

"[b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577. A party seeking rescission must also show "that it would suffer material harm if the agreement were enforced, though that need not be a pecuniary loss." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332–33 (Cal. Ct. App. 2009). Finally, California Civil Code § 1691 requires a party seeking rescission to "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so." *See Sharabianlou v. Karp*, 105 Cal. Rptr. 3d 300, 309 (Cal. Ct. App. 2010) (stating that rescission "restores the parties to their former positions by requiring them to return whatever consideration they have received").

For the similarity of the states' laws under mutual mistake, the parties' only dispute is whether there is a substantial difference in determining whether a party bears the risk of mutual mistake. Illinois and California have adopted and apply the Restatement (Second) of Contracts §154 to determine the allocation of risk. Section 154 provides that a party bears the risk of mistake when:

> (a) the risk is allocated to him by agreement of the parties, or
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

ONB concedes that Indiana does not follow § 154 when determining whether a party bears a risk of mistake, *see Peoples State Bank*, 2012 WL 243604, at *5, while both Illinois and California do. *See* Dkt. 39 at 13. Nevertheless, ONB contends "application of § 154 yields the same result as Indiana law with respect to whether a party bore the risk of mistake regarding the existence of

the Equipment." Dkt. 39 at 9. Leasing Innovations contends that because Indiana has not adopted § 154 that there is a significant difference in the laws. Specifically, Leasing Innovations argues that the third prong of § 154 "grants courts a level of discretion and flexibility not contemplated by the first two prongs of § 154 or by Indiana case law." Dkt. 46 at 7.

The Court's specific task in determining whether a conflict of laws exists, is not to take a global view of an area of law and pinpoint each difference in application. Instead, the Court must determine whether application of the laws will be "outcome determinative under the facts of this case." *Carolina Cas. Ins. Co. v. Estate of Studer*, 555 F. Supp. 2d 972, 978 (S.D. Ind. 2008). Here, there is no allegation that the contract assigned the allocation of risk to either party. Therefore, the Court must determine if Indiana's laws substantially differ from Illinois' and California's application of § 154(b) and (c).

In Indiana, a party bears the risk of mistake when such risk is inherent in the agreement or the agreement deals with future predictions. *Jay Cnty. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 692 N.E.2d 905, 912 (Ind. Ct. App. 1998) (citing *United States v. Sw. Elec. Coop. Inc.*, 869 F.2d 310, 314 (7th Cir. 1989) (holding that "the doctrine of mutual mistake does not cover an erroneous 'prediction or judgment as to events to occur in the future'")). In *Peoples State Bank*, this Court held that a basic assumption of a contract is not an inherent risk in a contract. *Peoples State Bank*, 2012 WL 243604, at *5. Therefore, when a mistake is made about a basic assumption on the contract, as alleged here, the mistake cannot be a risk allocated to a party as an inherent risk of the contract.

As an initial matter, ONB argues that courts applying § 154 would hold similarly, noting that this Court cited *First Merit Bank, N.A. v. Vision Fin. Grp., Inc.*, No. 04-1497, 2006 WL 2806566 (W.D. Pa. 2006) (applying § 154 for allocation of risk), for support in *Peoples State*

*Bank*. In *First Merit Bank*, the parties contracted for an assignment of a lease secured by a third party's manufacturing furnace and the contract included an assignment of risk clause. *First Merit Bank*, 2006 WL 2806566, at *4. It later came to light that the third party never owned the furnace, and the owner of the assignment looked to rescind the contract on the basis of mutual mistake. *Id.* To begin, The *First Merit Bank* court determined that the existence of the furnace was a basic assumption of the agreement, the court then applied § 154, and finally determined the contract between the parties allocated the risk to the plaintiff under § 154(a). *Id.* at *5–7. In short, the *First Merit Bank* court relied upon the contract itself to determine who bore the risk.

In *Peoples State Bank*, the court cited *First Merit Bank*'s conclusion that the existence of the security interest was a basic assumption of a contract. *Peoples State Bank*, 2012 WL 243604, at *6–7. The *Peoples* court went on to conclude that a basic assumption of the agreement is not an inherent risk of a contract that could be allocated to the plaintiff. *Id.* at *7. However, the holdings in *Peoples State Bank* and *First Merit Bank* are not analogous, because *First Merit Bank* dealt with an express allocation of risk and did not apply § 154(b) or (c) to determine whether a mistake about a basic assumption of a contract can serve as a basis for allocating risk. Therefore, this Court finds ONB's reliance on *Peoples State Bank* and *First Merit Bank* is misplaced.

The Court's inquiry, then, is whether Illinois and California courts would hold that a mistake regarding the non-existence of basic assumption of a contract is not a risk allocated under § 154(b) or (c). The Court will first address Leasing Innovation's contention that Indiana law does not allocate risk on the ground that it is reasonable in the circumstances to do so. In *Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 616 F.3d 618, 622–23 (7th Cir. 2010), the Seventh Circuit applied Indiana law to determine allocation of risk for a

7

mutual mistake. In the case, the government defendants entered into an arrangement to build a new development where plaintiff's business was located. To avoid eminent domain proceedings, the defendants entered into a sales and option contract with the plaintiff. Two months later, the development arrangement fell through, and the plaintiff sought reformation of the sales and option contract partially on the basis of mutual mistake. *Id.* at 620. Because the parties had not allocated the risk that the development project would fail, the court considered the circumstances of the contract and legal principles involved to determine who bore the risk. *Id.* The court found it probable under the circumstances that Indiana would assign the risk of mutual mistake to the defendants. However, the court did not characterize the risk as either a failed prediction, as the defendants argued, or a mistake of present fact, as the plaintiffs argued. Although the law is not clear, this Seventh Circuit opinion suggests that Indiana law would likely allow for a court to use discretion in determining whether to allocate risk, as in § 154(c). Because Illinois and California both apply § 154(c), the Court finds that application of this factor, instead of Indiana law, would not be outcome determinative.

      Finally, the Court finds § 154(b) has no applicability to this case when viewed through Illinois and California law. Section 154(b) is reserved for instances when "[e]ven though the mistaken party did not agree to bear the risk, he may have been aware when he made the contract that his knowledge with respect to the facts to which the mistake relates was limited." Restatement (Second) of Contracts § 154, cmt. c. For example, in *Grenall v. United of Omaha Life Ins. Co.*, 165 Cal. App. 4th 188 (Cal. Ct. App. 2008), the court found that when the parties entered into a life annuity contract with a mistaken view that the plaintiff was healthy, the risk was allocated to the plaintiff. The court stated, "[w]e cannot fix the length of our lives or even the state of our health with certainty, and the parties knew that their expectations in this regard

8

were at best an educated guess." *Id.* at 193–94. While the court went on to say "such risks are an inherent part of life annuity contracts," suggesting that under Indiana law a similar result would have been reached, this situation is not analogous to the facts in the current case. Here, the Court is not faced with a situation in which the parties were aware of the inherent risk of mistake or recognized their limited knowledge about the facts underlying the agreement. Therefore, the Court need not hash out the details of whether Indiana, Illinois, or California law dictates a different result when faced with inherent risks or those identified by § 154(b). The Court finds that application of Indiana, Illinois, or California law is not outcome determinative.

### B. Failure of Consideration

In Indiana, a "complete failure of consideration is grounds for rescission by a non-defaulting party." *Smeekens v. Bertrand*, 311 N.E.2d 431, 435 (Ind. 1974). A failure of consideration "excuses the performing party from having to perform, because he's receiving nothing in return." *Estate of Luster v. Allstate Ins. Co.*, 598 F.3d 903, 908 (7th Cir. 2010). In Illinois, a total failure of consideration warrants rescission. *Finke v. Woodard*, 462 N.E.2d 13, 16 (Ill. App. Ct. 1984); *see TMF Tool Co., Inc. v. Siebengartner*, 899 F.2d 584, 587 (7th Cir. 1990). In California, California Civil Code § 1689(b) allows a party to rescind a contract "if the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds," "if the consideration for the obligation of the rescinding party becomes entirely void from any cause," or "if the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause."

In this case, ONB alleges its consideration received from Leasing Innovations completely failed because the consideration, which was secured by the Equipment, did not exist. Further it argues the laws of each state would recognize the non-existence of the Equipment as a complete

failure of consideration.  The Court agrees with ONB that, as applied to this set of facts, the failure of consideration laws of Indiana, Illinois, and California are substantially similar.  However, Leasing Innovation argues that the Assignment's "no recourse" clause would bar this claim in Illinois and California.

The Assignment agreement between ONB and Leasing Innovations states "[a]ssignee [ONB] shall have no recourse against the Assignor [Leasing Innovations] provided that Assignor is not in breach of any covenant or agreement under this Agreement."  Dkt. 40-10 at 1.  In Illinois, the courts have held that a "no recourse" or "as is" clause means the party has no right to reimbursement or rescission of a contract, including for failure of consideration.  *Garofalo Co. v. St. Mary's Packing Co.*, 90 N.E.2d 292, 295 (Ill. App. Ct. 1950).  Leasing Innovations cites a California case holding that a promissory note endorsed "without recourse," shields an assignor from liability, *Gaetani v. Goss-Geldon West Sheet Metal*, 84 Cal. App. 4th 1118, 1128 (Cal. Ct. App. 2000), and thus argues the same reasoning would apply to the Assignment in this case.  However, *Gaetani* is a case arising under California's version of the Uniform Commercial Code ("UCC"), and is not readily analogous to the current case and the Court has been unable to find any relevant "no recourse" California cases.

Leasing Innovations further argues Indiana courts have never addressed the "no recourse" language, and accordingly, this would be a case of first impression on that issue.  The Court has been unable to find any Indiana cases that address the effect on rescission of a contract's "no recourse" clause, which supports Leasing Innovations' contention.  However, "the absence of precedent in Indiana on [this] issue[ ] does not necessarily mean a conflict of law exists."  *Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 292 (Ind. Ct. App. 1997).  Moreover, the Court notes that Indiana has also adopted the UCC principle followed in *Gaetani*.

*See* Ind. Code § 26-1-3.1-415(b) (stating that a note signed "without recourse" shields an endorser from liability).

Ultimately, the Court does not find a substantial difference in the laws of Indiana, California, and Illinois on this issue. Both Indiana and California follow contract interpretation guidelines that instruct courts to interpret contracts by determining the intent of the parties at the time of the contract, guided by the language used to express their rights and duties. *First Fed. Sav. Bank of Ind. V. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind. 1990); *see Bank of the West v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992). Given the complete lack of ambiguity in the Assignment's "no recourse" clause, the Court finds that courts in each state would reach a substantially similar conclusion.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that, as applied to the facts of this case, the laws of Indiana, Illinois, and California would not produce a substantially different result. In absence of a conflict, the Court need not undertake an "intimate contacts" analysis, and will apply Indiana law. Accordingly, ONB's motion (Dkt. 37) is **GRANTED** and Leasing Innovation's motion (Dkt. 38) is **DENIED**.

SO ORDERED.

Date: 03/30/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Christian J. Jorgensen
DRESSLER & PETERS, LLC
jorgensen@dresslerpeters.com

Kenneth D. Peters
DRESSLER PETERS LLC
kpeters@dresslerpeters.com

Kenneth E. Rubinstein
PRETI FLAHERTY BELIVEAU & PACHIOS, LLP
krubinstein@preti.com

Joseph L. Mulvey
RUBIN & LEVIN, PC
jmulvey@rubin-levin.net

R. Brock Jordan
RUBIN & LEVIN, PC
brock@rubin-levin.net